NO. 07-08-0207-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 24, 2009
______________________________

YOHAWNN DANTE BYNES, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 31ST DISTRICT COURT OF WHEELER COUNTY;

NO. 4062; HON. STEVEN EMMERT, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
Â Â Â Â Â Â Â Â Â Â Yohawnn Dante Bynes appeals his conviction for possessing a controlled substance
with intent to deliver by contending: 1) the evidence is legally and factually insufficient to
sustain his conviction as a principal, 2) the evidence is legally and factually insufficient to
sustain his conviction as a party, and 3) the trial court erred in denying his motion to
suppress. We affirm the judgment.
Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Background
Â Â Â Â Â Â Â Â Â Â On June 1, 2003, Troopers Jerome Ingle and Jason Lindley observed a vehicle, on
I-40, driven by Melissa Perkins and traveling too close to the vehicle in front of it. While
attempting to catch up to Perkins, they also observed her change lanes without signaling. 
Thereafter, the troopers initiated a traffic stop and, while doing so, noticed appellant twice
rise up in his seat from a reclining position and look at the officers. When the stop had
been performed and the troopers approached Perkinsâ car, appellant was found in the
passengerâs seat feigning sleep. Perkinsâ five-year-old daughter was discovered in the
back seat. 
Â Â Â Â Â Â Â Â Â Â Perkins showed Trooper Ingle a rental agreement for the vehicle, which was in her
name. The agreement was for a two day, one-way trip from California to Arkansas. 
Moreover, when questioned, she appeared to look to appellant for answers. Additional
inquiry revealed that she and appellant had only known each other for two weeks, did not
know each otherâs last names, and were traveling cross country together purportedly so
he could help her drive and she could visit relatives. The troopers also discovered that
appellant lied when informing them that he had no identification. He told them that he had
lost his identification or wallet. The troopers thought this odd since that suggested he was
traveling cross-country without either identification or money. Nevertheless, when
appellant was asked to exit the car and pull his pants up, his wallet was seen in his pocket,
and at that point he produced identification. 
Â Â Â Â Â Â Â Â Â Â When asked for consent to search the vehicle, appellant told the troopers to ask
Perkins since the vehicle was not his. In turn, Perkins denied them consent. This resulted
in the troopers calling for a drug dog. The latter eventually alerted on the vehicle. 
Subsequent inspection of the car uncovered 530 grams of cocaine in a camera case on
the floor behind the driverâs seat. The camera itself was next to where appellant sat while
in the car. Â 
Â Â Â Â Â Â Â Â Â Â Issues 1-4 - Sufficiency of the Evidence
Â Â Â Â Â Â Â Â Â Â In his first four issues, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction as either a principal or a party. He asserts that he was
not in exclusive possession or control of the place where the contraband was found, and
the only evidence linking him to the drugs was his presence in the vehicle. We overrule
the issue.
Â Â Â Â Â Â Â Â Â Â To prove the charge against appellant, the State was required to demonstrate that
he knowingly exercised care, custody or control over a controlled substance. Poindexter
v. State, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005). Furthermore, when the accused
does not have sole possession of the locale where the drugs are found, we look at various
indicia to see if he is nonetheless linked to them. Evans v. State, 202 S.W.3d 158, 161-62
(Tex. Crim. App. 2006). Those indicia consist of things such as whether 1) the accused
was present when the search was conducted, 2) the contraband was plainly visible by
those present, 3) the drugs were near the defendant, 4) the defendant was under the
influence of the substance found, 5) the defendant possessed other contraband or drug
paraphernalia when arrested, 6) the defendant uttered any incriminating statements, 7) the
defendant attempted to flee or undertook acts indicating a consciousness of guilt, 8) the
defendant made furtive gestures, 9) the contraband emitted a recognizable odor at the
time, 10) other contraband or drug paraphernalia was present, 11) the defendant had the
right to exclusive or joint possession of the locale where the drugs were found, 12) the
place where the drugs were found was enclosed, 13) the amount of contraband discovered
was large, and 14) the accused was familiar or had experience with drugs. Valle v. State,
223 S.W.3d 538, 541 (Tex. App.âAmarillo 2006, pet. dismâd). Moreover, the number of
indicia present is not as important as the degree to which they tend to link the defendant
to the contraband. Wallace v. State, 932 S.W.2d 519, 524 (Tex. App.âTyler 1995, pet.
refâd). 
Â Â Â Â Â Â Â Â Â Â In considering the indicia here, we find the following in the record: 1) appellant twice
rose to stare at the officers though he feigned sleep when they approached the car on foot,
2) appellant was seen reaching towards the area behind the driverâs seat, 3) the drugs
were located in a camera case within easy reach to where appellant lay when reclining, 4)
the camera case was not zipped shut although its flap was folded over, 5) appellantâs
shoes were located in the back seat, 6) the camera itself was found on the floor of the front
passenger seat where appellant was sitting beside a fully loaded Glock pistol magazine,
7) appellant lied to the officer about having no identification, 8) the quantum of cocaine
found was an amount that would be used for distribution as opposed to personal use, 9)
the driver of the vehicle seemed to be looking to appellant for answers when she was
questioned by the officers, 10) Perkinsâ gaze remained fixed towards appellant while being
questioned,11) even though appellant was not listed on the car rental contract as a driver,
he told the officers that he was in the car to help drive, 12) even though Perkinsâ name was
on the rental contract, she was unemployed and she and appellant barely knew each other,
and 13) Ingle testified that based on his training and experience, he knew that drug
couriers often use a rental vehicle, often try to avoid identification, and often have little
acquaintance with those with whom they travel. Upon considering them in their totality,
these factors would allow a rational jury to infer, beyond reasonable doubt, that appellant
not only knew of the contraband in the vehicle but also exercised care, custody or control
over it. 
Â Â Â Â Â Â Â Â Â Â Admittedly, Perkins was allowed to retrieve her child from the back seat and await
the drug dogâs arrival by sitting in the front passenger seat. While this could suggest that
she had time to manipulate the drugs, the jury was free to reject that hypothesis. And, at
the very least, appellant had as much access to the drugs as did Perkins. Therefore, the
verdict was not so against the great weight of the evidence as to destroy our confidence
in it. Accordingly, we find the evidence both legally and factually sufficient to support
appellantâs conviction. Â 
Â Â Â Â Â Â Â Â Â Â Issue 5 - Motion to Suppress
Â Â Â Â Â Â Â Â Â Â Appellant also challenges the trial courtâs denial of his motion to suppress. 
Purportedly, the officers lacked reasonable suspicion to effectuate the traffic stop. 
Furthermore, Trooper Ingleâs opinion that Perkins was following the car in front of her too
closely was not supported by specific articulable facts, according to appellant. We overrule
the issue. 
Â Â Â Â Â Â Â Â Â Â Â In reviewing a motion to suppress, we afford great deference to the trial courtâs
interpretation of historical facts. Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App.
2005). That deference extends to both the trial courtâs authority to assess the credibility
of the witnesses and its authority to disbelieve or believe controverted testimony. State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, we do not afford the same
deference to the trial courtâs application or interpretation of the law. Ford v. State, 158
S.W.3d at 493. Finally, we note that a law enforcement officer may stop a vehicle if he has
a reasonable suspicion to believe that a traffic violation is in progress or has been
committed. McQuarters v. State, 58 S.W.3d 250, 255 (Tex. App.âFort Worth 2001, pet.
refâd). 
Â Â Â Â Â Â Â Â Â Â Irrespective of whether Perkins was driving too closely to another vehicle, Trooper
Ingle testified that prior to actually turning on his lights and initiating the stop, he observed
Perkins change lanes without signaling, which itself constituted a traffic violation. Thus,
there existed legitimate basis for the stop.
Â Â Â Â Â Â Â Â Â Â Accordingly, the judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice
Do not publish.Â Â Â Â Â Â Â Â  
Â 



ium Shading 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00196-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL C

Â 



MARCH
23, 2011

Â 



Â 

JULIE ANN TURNER, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 



Â 

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

Â 

NO. B15347-0401; HONORABLE EDWARD LEE SELF, JUDGE



Â 



Â 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

Â 

Â 

MEMORANDUM OPINION

   Appellant, Julie Ann Turner, entered a plea of guilty to
possession of a controlled substance, methamphetamine, in an amount of less
than one gram[1]
and was sentenced to 18 months in a State Jail Facility (SJF) and fined $2,000;
however, appellantÂs SJF sentence was suspended, and appellant was placed on
community supervision for a period of five years.Â  Later, the State filed a motion to revoke
appellantÂs community supervision.Â  After
a hearing on the StateÂs motion to revoke, the trial court revoked appellantÂs
community supervision and sentenced her to the original sentence of 18 months
confinement in a SJF.Â  Appellant appeals
contending that one of the terms of probation that the State alleged appellant
violated was an invalid term and the resulting revocation must be
reversed.Â  Further, appellant contends
that the evidence was not sufficient to sustain the judgment of the trial court
revoking her community supervision.Â  We
will affirm.

Factual and Procedural Background

Â Â Â Â Â Â Â Â Â Â Â  Following
appellantÂs indictment for possession of a controlled substance,
methamphetamine, in an amount of less than one gram, appellant entered into a
plea bargain with the State.Â  As a result
of the plea bargain, appellant was found guilty of the indicted offense and
sentenced to serve 18 months in an SJF and pay a $2,000 fine.Â  The SJF portion of the sentence was
suspended, and appellant was placed on community supervision for a period of
five years.Â  AppellantÂs community
supervision was later modified by agreement, the modification extending the
period of community supervision for an additional one year.Â  Among the terms and conditions of community
supervision applicable to appellant, two are the focus of the StateÂs motion to
revoke: term and condition four requiring appellant to report to the Community
Supervision and Corrections Officer each month and term and condition 20
requiring appellant to complete 400 hours of community service on a community
service project as assigned by the supervision officer.Â  The StateÂs motion to revoke community
supervision alleged that appellant failed to report on two specified months and
that appellant had failed to complete the 400 hours of community service as
required.Â  

Â Â Â Â Â Â Â Â Â Â Â  At
the hearing on the StateÂs motion to revoke, appellant pleaded true to the
allegations contained in the motion.Â 
After hearing evidence regarding the circumstances surrounding the
violation of the terms and conditions of community supervision, the trial court
found the allegations to be true and sentenced appellant to serve 18 months in
an SJF.Â  

Â Â Â Â Â Â Â Â Â Â Â  Appellant
appeals, contending that term and condition 20 is invalid and that the evidence
is insufficient to support the trial courtÂs judgment regarding appellantÂs
violation of term and condition 20.Â  We
disagree with appellant and will affirm the judgment of the trial court.

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  An
order revoking community supervision is reviewed under an abuse of discretion
standard of review.Â  See Rickels v. State, 202
S.W.3d 759, 763 (Tex.Crim.App. 2006).Â  Further, we examine the evidence in a light
most favorable to the trial courtÂs order.Â 
See Pena v. State, No. 07-10-00206-CR, 2011 Tex. App.
LEXIS 653, at *4 (Tex.App.ÂAmarillo January 28, 2011,
no pet.) (mem. op., not designated for publication) (citing Garrett v. State, 619 S.W.2d 172, 174 (Tex.Crim.App. 1981)).Â 
A plea of true, standing alone, is sufficient to support a revocation of
community supervision.Â  See Moses
v. State, 590 S.W.2d 469, 470 (Tex.Crim.App.
1979).Â  A revocation may be founded upon
the trial courtÂs determination that there was a violation of a single term and
condition of community supervision.Â  See McCollum v. State, 784 S.W.2d 702, 704 (Tex.App.ÂHouston [14th Dist.] 1990, pet. refÂd).Â  

Â 

Analysis

Â Â Â Â Â Â Â Â Â Â Â  Appellant
pleaded true to both allegations contained in the StateÂs motion to
revoke.Â  The trial court heard the
evidence and found that appellant had violated both the terms and conditions
alleged in the StateÂs motion to revoke.Â 
Therefore, even were we to assume that appellantÂs contention regarding
term and condition 20 was correct, which we do not, there would still be a term
and condition that appellant was found to have violated.Â  Appellant has not appealed the trial courtÂs
determination that she violated her reporting term and condition.Â  Accordingly, the trial courtÂs finding stands.Â  See id.Â  The trial court did not abuse its discretion
in finding that appellant violated her reporting requirements.Â  Rickels, 202 S.W.3d at 763.

Term and Condition 20

Â Â Â Â Â Â Â Â Â Â Â  Because
of our disposition of this matter, we need not address appellantÂs allegations
regarding term and condition 20.Â  See
Tex. R. App. P. 47.1.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  Having
determined that the trial court did not abuse its discretion in revoking
appellantÂs community supervision, we affirm the judgment of the trial court.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Mackey
K. Hancock

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Do not publish.











[1]Â  See Tex. Health
& Safety Code Ann. Â§ 481.115(a) (West 2010).